IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sean Deron Wells, #335757, | ) | C/A No. 5:15-01652-CMC-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Michael M. Stevenson, III, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Sean Deron Wells ("Petitioner") is a state prisoner who filed this pro se petition for a writ
of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the court pursuant to 28
U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and
Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 10, 11.
On June 16, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court
advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible
consequences if he failed to respond adequately to Respondent's Motion. ECF No. 12.  On July
17, 2015, Petitioner filed a Response in Opposition to Respondent's Motion for Summary
Judgment. ECF No. 23. Having carefully considered the parties' submissions and the record in
this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF
No. 10, be granted.

I.    Background

Petitioner is currently incarcerated in the Broad River Correctional Institution ("BRCI")
of the South Carolina Department of Corrections ("SCDC").  ECF No. 1 at 1.  In 2008, Petitioner

was indicted at the October term of the York County grand jury for two counts of armed robbery (2008-GS-46-04104, 2008-GS-46-04100) and three counts of kidnapping (2008-GS-46-04103, 2008-GS-46-04102, 2008-GS-46-04101). App. 65-66.[1] Additionally, Petitioner was indicted for first-degree burglary during the November 2008 term (2008-GS-46-02144). During the May 2009 terms of court for the York County grand jury, Petitioner was indicted for first-degree and second-degree burglary (2009-GS-46-04577; 2009-GS-46-02148). App. 77-80. In exchange for Petitioner pleading guilty, the State dismissed several charges and on July 9, 2009, Petitioner pleaded guilty before the Honorable Lee S. Alford to grand larceny; three counts of second-degree burglary, non-violent; two counts of strong armed robbery, and three counts of kidnapping. App. 1-47. During his plea, Attorney William Hancock represented Petitioner, and Assistant Solicitor Dan Hall appeared on behalf of the State. *Id.* Judge Alford sentenced Petitioner to 10 years imprisonment for the reduced charge of grand larceny; 15 years imprisonment for the reduced charge of second-degree burglary, non-violent; 15 years imprisonment for a reduced charge of strong armed robbery; and 28 years imprisonment for three counts of kidnapping. App. 45-47. Judge Alford instructed that all sentences run concurrently, and Petitioner received credit for time served. *Id*. Petitioner did not file a direct appeal of his convictions or sentence.

II.    Procedural History

Petitioner filed an application for post-conviction relief ("PCR") on June 9, 2010, alleging, verbatim, the following claims for Ineffective Assistance of Counsel:

---

[1] Citations to "App." refer to the Appendix for Petitioner's guilty plea transcript and Post-Conviction Relief ("PCR") Proceedings. That appendix is available at ECF No. 11-1 in this habeas matter.

> 1) Failure to advise petitioner that ALL crimes are commercial crimes, Code of Federal Regulations, Title 27. Volume 1, Part 77.11. (SEE ATTACHED APPENDIX "B")
>
> 2) Failure to assert request for lesser offense.
>
> 3) Failure to file a) Motion for Reconsideration, & b) Direct Appeal as requested by petitioner.
>
> 4) Failure to raise validity of Indictments being legally composed.
>
> a) Whom was the forman of the Grand Jury?
>
> b) Was indictment returned in open court my forman of Grand Jury?
>
> c) Are transcripts of the convened Grand Jury for session that indicted petitioner available?
>
> d) Is the certificate of concurrence filed with the Office of the Clerk of Courts?
>
> 5) Failure to challenge composition & array of Grand Jury
>
> a) Were the members of the Grand Jury truely my peers in the true sense of the word.
>
> b) Also, failure to counsel petitioner on 4th / 5th /& 6th amendment rights.
>
> 6) Failure to obtain grand jury minutes & Applications in which the judge allowed the state to seek a Grand Jury.
>
> 7) Failed to present the true nature and cause of accusations. See Appendix "C".
>
> 8) Mr Handcock (Petitioners Trial Counsel) misrepresented petitioner, & petitioner believes that Mr. Handcock is guilty of fraudulent concealment. Also, Mr. Handcock violated petitioners due process by presuming that petitioner was guilty, & not investigating his case, a 14th amendment Due Process Violation.

App. 51; 56. The State filed a Return on December 9, 2010. App. 61-64. Thereafter, a hearing convened on October 11, 2011, before the Honorable Paul M. Burch. App. 107-257. Petitioner was present and represented by Attorney Arie D. Bax, and Assistant Attorney General Matthew J. Friedman appeared on behalf of the State. *See id.* William Hancock, Petitioner's plea counsel, Petitioner's mother Betty Wells, and Petitioner's brother Kevin Wells, also appeared and testified at the hearing. *Id.* After the hearing, the PCR court denied and dismissed Petitioner's PCR Application with prejudice on February 10, 2012, making the following summaries of evidence and testimony, findings of fact, and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the hearing. This Court has

further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003). Applicant testified that he and his family retained Mr. Hancock as counsel for this case. He testified that he was arrested in July 2008 and first met with counsel in August 2008. He testified that investigator Ronnie Bowers was with counsel, and they all went through the discovery and talked about the charges. Applicant asserted that counsel suggested that Applicant take a 0-30 plea. He testified that Mr. Bowers returned to see him two weeks later, and they discussed the discovery and Applicant told Mr. Bowers about some things that were wrong in the discovery. He asserted that the police reports did not match up with the discovery. Applicant testified that he had witnesses, including his girlfriend Nayla James, who could have been an alibi witness for him but counsel did not contact her. He testified that he did not meet with Mr. Bowers again because Mr. Bowers had a stroke. Applicant testified that he did not see counsel between August 2008 and two days before the plea. He asserted that he called counsel's office two or three times a week, but counsel was never available to speak with him. Applicant testified that he did not know the maximum penalties for the offenses or his right to a jury trial, and he did not discuss the cap of thirty (30) years with counsel. He testified that he and counsel did not discuss potential defenses. Applicant also testified that he and counsel did not discuss the search warrant issues, and if he had known he could have moved to suppress the evidence, then he would have gone to trial. He asserted that he told counsel he was not guilty of the kidnapping charges.

Applicant testified that he did not see the SLED report until after the plea. He contended that he did not have any discussions with counsel about the DNA evidence. He testified that counsel said it would help if Applicant's DNA was not on the glove. Applicant testified that he told the court that he did not kidnap anyone, and the plea court told him to go to trial and "see if he can prove it in a trial." He testified that counsel failed to object to the court's comments. He asserted that counsel told him not to make the plea judge mad. Applicant testified that he wanted to go to trial, but he did not think counsel was prepared for trial. He testified that he asked counsel to file an appeal after the plea and counsel agreed, but Applicant asserted that he never received a direct appeal. Applicant testified that he was on a flight into Charlotte when one of the burglaries occurred and his girlfriend picked him up at the airport. He testified that he gave counsel the contact information for his girlfriend.

Betty Wells, Applicant's mother, testified that she lives in New York. She testified that counsel never contacted her and she did not get enough notice to come down to South Carolina for the plea hearing. She testified that she spoke with investigator Bowers..

4

Kevin Wells, Applicant's brother, testified that he lives in New York. He testified that he was not present for the plea hearing because he found out a day a half before the plea that it was going forward. He testified that he spoke with Mr. Bowers, but he never spoke with plea counsel.

Plea counsel testified that Ronald Bowers was his investigator. He testified that Mr. Bowers tried to contact Applicant's girlfriend in Charlotte and was unable to get in touch with her. He testified that he did not hire another investigator after Mr. Bowers had a stroke. Counsel testified that the discovery came in intervals, but he received everything the State received. He asserted that there was nothing exculpatory in the discovery. He testified that the solicitor indicated that Applicant would have been exposed to life without parole (LWOP) if he proceeded to trial. Counsel testified that the solicitor indicated that the first trial would be for the burglary and kidnapping of the 15-year old female victim. He testified that he met with Applicant probably three times prior to April 3, which was the day that the plea offer expired. Counsel testified that he did not discuss a suppression motion with Applicant, but he agreed with the solicitor that any motions would be made on the first day of trial. He asserted that he was prepared to go to trial. Counsel testified that it was Applicant's decision to plead guilty. He testified that he explained to Applicant about fifteen times that if you hold someone against his or her will for any length of time it is considered kidnapping. Counsel testified that he did not think Judge Alford was trying to intimidate Applicant when he told Applicant to go to trial and prove his case.

Counsel testified that he and Applicant discussed the possible sentences, the elements of the offenses, and potential defenses including alibi defense. He had Applicant sign a checklist indicating that he understood his right to a jury trial and the possible sentences he was facing. Counsel testified that he discussed the cap of thirty (30) years with Applicant and explained the consequences of the plea. He asserted that Applicant did not ask him to file an appeal. During his deposition, Mr. Bowers testified that he worked as an investigator for Mr. Hancock for ten years. He testified that he had a stroke on April 4, 2009. Mr. Bowers testified that he had met with Applicant twice before the stroke and had a copy of the discovery. He testified that Applicant gave him the name and address of his girlfriend in Fort Mill, but she did not return his calls and he was unable to get into contact with her. He asserted that he told Applicant to tell the girlfriend that he was on Applicant's side. Mr. Bowers testified that Applicant wanted him to go to New York to meet with Applicant's father about an alibi, and Mr. Bowers asked Applicant how he could have been in Fort Mill and New York at the same time during the offenses. Mr. Bowers testified that he did not recall anything out of the ordinary in the search warrant.

### Ineffective Assistance of Counsel

The Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.l(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry, 386 S.E.2d 624.

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 625. With respect to guilty plea counsel, the applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985).

This Court finds that Applicant's testimony is not credible while also finding that trial counsel's testimony is credible. This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on several occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, and possible defenses or lack thereof.

This Court finds that it was Applicant's decision to accept the plea offer. Applicant indicated during the plea hearing that he understood the nature of the charges and the possible punishments. He also indicated that he was satisfied with his attorney and that no one has threatened him or promised him anything to accept the plea offer. Applicant told the plea court that he was entering the plea of his own free will. He admitted guilt at the hearing. He also addressed the plea court, and apologized to the victims for violating their homes and their children.

This Court finds that Applicant entered the guilty plea freely and voluntarily with a full understanding of the consequences of the plea.

Regarding Applicant's claims of ineffective assistance of counsel, this Court finds Applicant has failed to meet his burden of proof. This Court finds that counsel demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with Applicant, reviewed the discovery with Applicant, conducted a proper investigation, and was thoroughly competent in his representation. Under the circumstances, counsel obtained a very favorable plea result for Applicant. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court finds that counsel met with Applicant a sufficient number of times prior to the plea. Counsel had notes from his meetings with Applicant and made Applicant sign a plea affidavit, indicating that Applicant understood the possible punishments, his right to a jury trial, and the potential defenses he would have at trial. This Court finds that counsel was prepared for trial had Applicant elected to proceed to trial.

This Court finds that counsel was not ineffective for failing to discuss a potential motion to suppress with Applicant. Counsel testified that he agreed with the solicitor that all motions to suppress and other pre-trial motions would be made on the first day of trial. In this case, Applicant decided to accept the plea offer before the point in which pre-trial motions would have been made.

This Court finds that counsel conducted a thorough investigation. Counsel hired an investigator, attempted to track down potential alibi witnesses, reviewed the discovery with Applicant, and discussed the case with the solicitor. Although his investigator suffered a stroke before the investigation was complete, counsel continued to prepare for trial. Applicant testified that counsel failed to track down his girlfriend in Fort Mill, but the testimony is clear that Mr. Bowers attempted several times to contact Applicant's girlfriend and she did not return his calls. This Court finds that Applicant has failed to demonstrate any deficiency from counsel's failure to hire another investigator after Mr. Bowers' stroke.

This Court finds that counsel was not ineffective for failing to object to the plea court's comments that Applicant should go to trial and see if he can prove that he did not kidnap anyone. This Court finds that the plea judge was not trying to intimidate or coerce Applicant into pleading guilty or going to trial. Rather, the plea judge was merely asking Applicant if he was guilty of these offenses. Ultimately, Applicant admitted his guilt on each offense. It is clear from counsel's

testimony that Applicant had difficulty understanding the elements of kidnapping in that holding someone against his or her will for any length of time is considered kidnapping.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

## **Failure to Appeal**

Applicant alleges that counsel was ineffective for failing to file a direct appeal on his behalf. This Court finds that Applicant is not entitled to a belated direct appeal. The United States Supreme Court has rejected a bright-line rule that counsel must always file an appeal in a criminal case. Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029 (2000). The Court went on to hold that a professionally reasonable attorney should, in most cases, consult with the defendant regarding an appeal. Id.

In determining whether an attorney should consult with the criminal defendant concerning an appeal, the totality of the circumstance must be considered. Id. In examining the totality of the circumstances, courts should consider: (1) whether a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal); or (2) whether this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Id. Where the post-conviction relief judge determines that the applicant did not freely and voluntarily waive his appellate rights, the applicant may petition the South Carolina Supreme Court for review of direct appeal issues pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974). See Rule 243(i), SCACR; Davis v. State, 288 S.C. 290, 342 S.E.2d 60 (1986).

Trial counsel is not required to file a notice of appeal without specifically being asked to do so. Roe, 528 U.S. 470. In the present case, this Court finds counsel's testimony credible that Applicant did not ask him to file an appeal.

## **All Other Allegations**

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the

Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his plea or sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of written notice of entry of this Order to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely served and filed.

**IT IS THEREFORE ORDERED**:

1. That the Application for Post-Conviction Relief must be denied and dismissed with prejudice; and
2. That the Applicant must be remanded to the custody of Respondent.

App. 94-102. On February 27, 2012, Attorney Bax filed a Motion to Reconsider on Petitioner's behalf, App. 103-04, and the PCR Court denied the Motion on March 20, 2012, App. 105. Petitioner filed a Notice of Appeal with the South Carolina Supreme Court on March 29, 2012, ECF No. 11-3, and in a Petition for Writ of Certiorari Petitioner presented the following four issues:

1. Did the PCR judge err in finding that the Petitioner's plea counsel was not ineffective for failing to adequately investigate Petitioner's case?

2. Did the PCR judge err in finding that Petitioner's plea counsel was not ineffective for failing to inform Petitioner of his rights to a pre-trial evidentiary hearing?

9

3.  Did the PCR judge err in finding that Petitioner's plea counsel was not ineffective for failing to object to the plea court's improper comments made [to] Petitioner during his plea hearing?

4.  Did the PCR judge err in finding that Petitioner was not entitled to a belated appeal based on plea counsel's failure to file a Notice of Intent to Appeal on Petitioner's behalf pursuant to *White v. State*?

ECF No. 11-4. Assistant Attorney General J. Rutledge Johnson filed a Return to the Petition on behalf of the State. ECF No. 11-5. After the case was transferred, the South Carolina Court of Appeals denied the Petition for Writ of Certiorari on February 9, 2015. ECF No. 11-6. Thereafter, the court issued the Remittitur on February 25, 2015. ECF No. 11-7.

III.   Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Ineffective Assistance of Counsel, in violation of Applicant's Sixth Amendment Rights. (See Attached Sheets)
> Supporting Facts: Counsel failed to filed a requested direct appeal, and failed to inform as well as explain Applicant's rights to trial on kidnapping, when applicant denied committing any kidnapping and other Burglary charges. (See Attached Sheets). ECF No. 1 at 5.

> GROUND TWO: Ineffective Assistance of Counsel, in violation of Applicant's Sixth Amendment Rights.
> Supporting Facts: Counsel failed to obtain or investigate the DNA results of which the State falsely alleged such results placed the applicant on the scene. Whereas, such DNA results were proven to be falsely generated during the PCR hearing. *Id.* at 6.

> GROUND THREE: Ineffective Assistance of Counsel, in violation of Applicant's Sixth Amendment Rights.
> Supporting Facts: Counsel was ineffective for failing to inform Applicant concerning his pre-trial rights involving the indictment and suppression hearing. (See Attached Sheets). *Id.* at 8.

> GROUND FOUR: Ineffective Assistance of Counsel, in violation of Applicant's Sixth Amendment Rights.
> Supporting Facts: Counsel failed "to object" and appeal the improper comments made to petitioner during plea colloquy, that impacted the decision whether or not to plead guilty. (See Attached Sheets). *Id.* at 9.

Petitioner attaches an 11-page supplement to his Petition entitled "Attached Sheets Briefing 28 U.S.C. §2254." ECF No. 1 at 15-25.

### B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus Statute of Limitations

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).  Further, the AEDPA provides that the limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1)(A)-(D). The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the

pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

IV.    Analysis

A.  Timeliness of Petitioner's Application

Respondent argues that Petitioner's habeas petition should be dismissed because it is time barred. ECF No. 11 at 8-10.  As stated above, the AEDPA provides that "[a] 1 year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court." 28 U.S.C. § 2244(d)(1). The time limit begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The United States Supreme Court recently interpreted the two prongs of 28 U.S.C. § 2244(d)(1)(A) as follows:

> The text of § 2244(d)(1)(A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs. Each prong—the "conclusion of direct review" and the "expiration of the time for seeking such review"—relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because [petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.

*Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).

Here, it is undisputed that Petitioner did not appeal his conviction and sentence. Accordingly, the AEDPA's one-year statute of limitations began running when his state convictions became final. *See Gonzalez*, 132 S. Ct. at 654 (finding a Petitioner's conviction and

sentence become "final" when his "time for seeking review with the State's highest court expire[s]."). Here, Petitioner had ten days to timely file a notice of appeal from his conviction and sentence. *See* Rule 203 (b)(2), SCACR ("After a plea or trial resulting in conviction or a proceeding resulting in revocation of probation, a notice of appeal shall be served on all respondents within ten (10) days after the sentence is imposed."). Therefore, his conviction and sentence became final on July 20, 2009, or ten days after his guilty plea and sentencing on July 9, 2009. Pursuant to *Gonzalez*, the statute of limitations began running on July 20, 2009.[2] Petitioner subsequently filed his PCR application on June 9, 2010, (2010-CP-46-2430). App. 51. By the time Petitioner filed his PCR application, 324 days had elapsed from his one-year AEDPA statute of limitations.  Petitioner's PCR proceedings tolled the one-year limitations period. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). The statute of limitations remained tolled until the Court of Appeals issued the Remittitur on February 25, 2015. *See* ECF No. 11-7; *Frazier v. Stevens*, No. 4:09-302-JFA-TER, 2010 WL 921613, at * 3 n.6 (D.S.C. Mar. 10, 2010), *as amended* (Mar. 12, 2010) (tolling the period of limitations from the date petitioner filed his first PCR until the date the South Carolina Supreme Court issued the Remittitur); *Gambrell v. Bazzle*, No. 9:07-cv-00172-RBH-GCK, 2008 WL 269505, at *5 (D.S.C. Jan. 29, 2008) ("When the Supreme Court issued the Remittitur following its Order denying the petition for a writ of certiorari on December 19, 2003, Petitioner's first PCR action became final."). From the Remittitur date, Petitioner had 41 days remaining to timely file a federal habeas petition.

---

[2] July 19, 2009, was a Sunday. Therefore, the undersigned is calculating the elapsed time from the following Monday, July 20, 2009.

Therefore, Petitioner needed to file the Petition by April 7, 2015 in order for it to be timely. However, Petitioner did not file this habeas action until April 13, 2015. ECF No. 1-2 at 1; *see Houston v. Lack,* 487 U.S. 266, 270–71 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court).  The April 13, 2015 filing date was nearly a week after Petitioner's statute of limitations had run. Therefore, Petitioner's habeas petition is untimely under 28 U.S.C. § 2244(d).

    B.  The Statute of Limitations Should Be Equitably Tolled

    The AEDPA's statute of limitations is subject to equitable tolling, which could, in effect, extend the final date for filing a habeas petition.  *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). The Fourth Circuit has underscored the very limited circumstances in which equitable tolling of the AEDPA's limitations period will be permitted, holding that a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time."  *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc).  Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris*, 209 F.3d at 330. The respondent bears the burden of asserting the AEDPA's statute of limitations, *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002); the petitioner then bears the

burden of establishing that his petition is timely or that he is entitled to the benefit of the equitable-tolling doctrine, *Rouse*, 339 F.3d at 246.

In 2010, the United States Supreme Court considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005) (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be equitably tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418)).

In his response to Respondent's Summary Judgment Motion, Petitioner maintains that a licensed attorney instructed him that his deadline for filing a habeas petition was April 14, 2015. ECF No. 14, 14-2. A letter Petitioner submitted to the court corroborates Petitioner's representation. *See* ECF No. 19. Though the facts and file information given to the licensed attorney are not clear, the undersigned finds it would be unjust to not allow Petitioner to rely on the attorney's advice that "[his] habeas petition needs to be completed and in the mail to the District Court no later than April 14, 2015." *Id.* at 2. Therefore, in this instance, Petitioner has satisfied his burden of demonstrating entitlement to equitable tolling.  Accordingly, equitable tolling of the statute of limitations is merited. Accordingly, the undersigned will turn to the other arguments presented in Respondent's Motion.

   C.  Procedurally-Barred Grounds

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

        (A)     the applicant has exhausted the remedies available in the courts of the State; or

        (B)     (i) there is an absence of available State corrective process; or

                (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR;

S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.                                      Further

*McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).                                      Procedural     bypass,

sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply.  *See Teague*

*v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

Respondent contends that Petitioner's Grounds One, Three, and Four are preserved for habeas review because Petitioner "rais[ed] [them] on PCR appeal." ECF No. 11 at 13. However, Respondent argues that Ground Two is procedurally defaulted because "Petitioner did not specifically raise this issue on either direct or PCR appeal." *Id.* Petitioner briefly discusses default in his Response and asserts: "The respondent however, concedes 'that grounds one, three and four herein are properly preserved for review.'" ECF No. 14 at 6. Furthermore, Petitioner maintains that "[s]ince such concession has been made, Petitioner raised the involuntariness of his guilty plea under ineffective assistance of counsel." *Id.*

20

The undersigned has reviewed Petitioner's PCR application, the transcript of the PCR hearing, and the PCR appeal. Though Ground Two was discussed during the PCR hearing, *see* App. 109-266, and in the PCR Order of Dismissal, s*ee* App. 97, it was not raised in Petitioner's PCR appeal, ECF No. 11-4 at 3. Therefore, this issue is procedurally barred from federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012) ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."); *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) ("To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."); *Barner v. Reynolds*, No. CA 1:09-3233-RBH-SVH, 2011 WL 767126, at *5 (D.S.C. Jan. 21, 2011) *report and recommendation adopted*, No. CA 1:09-3233-RBH, 2011 WL 767121 (D.S.C. Feb. 25, 2011) ("Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim."). Accordingly, Petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the habeas claim delineated as Ground Two in his habeas Petition.

Petitioner may, nonetheless, overcome procedural defaults and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996). The existence of cause ordinarily turns upon a showing of: 1) a denial of effective assistance of counsel, 2) a factor external to the defense

which impeded compliance with the state procedural rule, or 3) the novelty of the claim. *Murray*, 477 U.S. at 488-90. Having reviewed the record evidence and the parties' legal memoranda, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claim. Thus, Ground Two is procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996), *cert. denied*, 519 U.S. 1016 (1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, Ground Two is procedurally barred from consideration by this court and should be dismissed. The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Ground Two.[2]

---

[2] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Ground Two.

D.      Merits

At issue are three ineffective-assistance-of-counsel claims. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 669. In the context of a guilty plea, ineffective assistance of counsel claims may be asserted in limited circumstances.  In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different

from an *incorrect* application of federal law.'" *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under *Strickland* standard itself." *Id.*

### 1.     Ineffective Assistance of Counsel-Right to Trial and Direct Appeal

Petitioner contends that he was denied effective assistance of counsel because his plea counsel "fail[ed] to file[] a requested direct appeal, and failed to inform as well as explain [his] rights to trial on kidnapping, when [Petitioner] denied committing any kidnapping and other burglary charges." ECF No. 1 at 5. Respondent argues that Petitioner's allegation that plea counsel failed to consult with Petitioner fails to meet the standard warranting relief. ECF No. 11 at 21. Additionally, Respondent argues "the PCR court applied the relevant federal law and found that under the circumstances presented in the record before it, Petitioner was not entitled to the benefit of a direct appeal." *Id.* at 25. The undersigned will address the consultation argument and the appeal argument in turn.

### i.     Trial Rights and Consultation

In rejecting Petitioner's post-conviction relief on this ground, the PCR court found "[plea] counsel adequately conferred with [Petitioner], reviewed the discovery with [Petitioner], conducted a proper investigation, and was thoroughly competent in his representation." App. 98-99. Additionally, the PCR court found that "[u]nder the circumstances, [plea] counsel obtained a very favorable plea result for [Petitioner]." App. 99. Furthermore, the PCR court found plea counsel "met with [Petitioner] a sufficient number of times prior to the plea, [and plea] Counsel had notes from his meetings with [Petitioner] and made [Petitioner] sign a plea affidavit, indicating that [Petitioner] understood the possible punishments, his right to a jury trial, and the

24

potential defenses he would have at trial." *Id.* Moreover, the PCR court found that "[plea] counsel was prepared for trial had [Petitioner] elected to proceed to trial." *Id.* Finally, the PCR court held that "[plea] counsel's representation did not fall below an objective standard of reasonableness." *Id.* On review, the South Carolina Court of Appeals denied Petitioner's petition for a writ of certiorari. ECF No. 11-6.

The undersigned finds that Petitioner cannot demonstrate that the PCR court or South Carolina Court of Appeals unreasonably misapplied clearly established federal law in rejecting this claim, or that the PCR court made objectively unreasonable factual findings. A review of the guilty plea transcript and the testimony at the PCR hearing reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here. Additionally, the PCR court found trial counsel's testimony to be credible and implicitly found Petitioner not to be credible. *See* App. 98. This credibility determination is also entitled to deference. *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003). Petitioner's argument that plea counsel failed to inform him of his trial rights fails to demonstrate that the PCR court unreasonably misapplied the *Strickland/Hill* test. Further, Petitioner has not clearly shown that the PCR court's credibility determinations were without support. *See Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'") (quoting *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) and *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)). Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Petitioner's claim of ineffective

assistance of counsel for failure "to inform as well as explain [Petitioner's] rights to trial" in Ground One.

ii.    Direct Appeal

Concerning Petitioner's claim that plea counsel was ineffective for failing to file a direct appeal on his behalf, the PCR court, citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), found that Petitioner was not entitled to a belated direct appeal. *See* App. 100. The PCR court noted that the *Roe* Court held "that a professionally reasonable attorney should, in most cases, consult with the defendant regarding an appeal." *Id.* The PCR court further found that in *Roe*, the Supreme Court determined:

> Whether an attorney should consult with the criminal defendant concerning an appeal, the totality of the circumstances must be considered [and under] the totality of the circumstances, courts should consider: (1) whether a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal); or (2) whether this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 100-101. Additionally, the PCR court held:

> Where the post-conviction relief judge determines that the applicant did not freely and voluntarily waive his appellate rights, the applicant may petition the South Carolina Supreme Court for review of direct appeal issues pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974). See Rule 243(i), SCACR; Davis v. State, 288 S.C. 290, 342 S.E.2d 60 (1986). Trial counsel is not required to file a notice of appeal without specifically being asked to do so. Roe, 528 U.S. 470. In the present case, this Court finds counsel's testimony credible that Applicant did not ask him to file an appeal.

*Id.* at 101.

The undersigned finds that the PCR court properly analyzed the factors of the *Roe* test. In considering the first factor of the *Roe* test, the undersigned finds there are not any apparent non-frivolous grounds for appeal, especially in light of Petitioner's negotiated plea deal. App. 1-

47. Under the second prong of the *Roe* test, the undersigned finds that evidence from the PCR hearing indicates that Petitioner did not ask that plea counsel to file a direct appeal. *See* App. 231; 234. Additionally, the plea transcript demonstrates that Petitioner was specifically advised that he had "ten days from today's date within which to file a notice of intent to appeal." App. 30. Immediately thereafter Petitioner testified that he understood his right to appeal. *Id.* Accordingly, the undersigned concludes that the state PCR court's determination on the issue was not contrary to, or an unreasonable application of, clearly established federal law. *See e.g.,* 28 U.S.C. § 2254(d)(1) (2); *Williams v. Taylor,* 529 U.S. 362, 411 (2000)("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Bustos v. White,* 521 F.3d 321, 325-26 (4th Cir. 2008) (holding there was no basis for determining that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law). Therefore, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Petitioner's claim of ineffective assistance of counsel for failure to file a direct appeal on Petitioner's behalf in Ground One.

2. Ineffective Assistance of Counsel-Failure to advise Petitioner of pre-trial rights involving indictment and suppression hearing

Concerning Ground Three of the Petition, the PCR court held that plea counsel "was not ineffective for failing to discuss a potential motion to suppress with Petitioner" based on plea counsel's testimony that "he agreed with the solicitor that all motions to suppress and other pre-trial motions would be made on the first day of trial." App. 99. Furthermore, the PCR court noted that here, Petitioner "decided to accept the plea offer before the point in which pre-trial motions

would have been made." *Id.* During the PCR hearing, plea counsel testified that he would have made suppression motions on the morning of trial. App. 195-96.

In this instance, the undersigned finds that plea counsel did not err under *Strickland* in failing to advise Petitioner on potential pre-trial motions. During the guilty plea, there were no suppression motions made because Petitioner waived his trial rights, including his pre-trial rights. Therefore, the undersigned finds that under the first prong of the *Strickland* test that plea counsel did not err. Second, the undersigned finds that there is not a reasonable probability that Petitioner would not have accepted the plea offer and would not have proceeded to trial had motions to suppress been discussed. The colloquy of the guilty plea indicates that Petitioner understood his rights and was waiving them by pleading guilty. App. 8-14.

Accordingly, the undersigned concludes that the state PCR court's determination on the issue was not contrary to, or an unreasonable application of, clearly established federal law. *See e.g.,* 28 U.S.C. § 2254(d)(1) (2); *Williams,* 529 U.S. at 411; *Bustos*, 521 F.3d at 325-26. Therefore, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Petitioner's claim of ineffective assistance of counsel for failing to inform Petitioner about his pre-trial rights in Ground Three.

3. Ineffective Assistance of Counsel-Failure to Object and appeal the improper comments made to Petitioner during the plea colloquy

In Ground Four, Petitioner maintains that the improper comments made to him during the plea colloquy impacted his decision to plead guilty. ECF No. 1 at 10. Concerning Ground Four of the Petition, the PCR court found:

> [Plea] counsel was not ineffective for failing to object to the plea court's comments that [Petitioner] should go to trial and see if he can prove that he did not kidnap anyone. This Court finds that the plea judge was not trying to

intimidate or coerce [Petitioner] into pleading guilty or going to trial. Rather, the plea judge was merely asking [Petitioner] if he was guilty of these offenses. Ultimately, [Petitioner] admitted his guilt on each offense. It is clear from counsel's testimony that [Petitioner] had difficulty understanding the elements of kidnapping in that holding someone against his or her will for any length of time is considered kidnapping.

App. 99-100. As Respondent points out, Petitioner is arguing that the following exchange from his plea hearing was "improper" and impacted his decision to plead guilty:

| | |
|---|---|
| Plea Court: | Do you disagree in any other way? |
| Petitioner: | Yeah, I do. |
| Plea Court: | What else do you disagree with what they say happened? |
| Petitioner: | I never kidnapped nobody. |
| Plea Court: | Sir? |
| Petitioner: | I never kidnapped nobody. I never -- I never forced nobody to do anything. I never had no weapon. |
| Plea Court: | All right. Let me ask you this. Did you put this girl, fifteen year old girl, in a closet? |
| Petitioner: | She attacked me with a fork and I tried to -- I was leaving -- I was leaving the residence you know what I'm saying?  I was leaving the residence. |
| Plea Court: | Did you take the fork away from her and put her in the closet? |
| Petitioner: | No, I did not. I never -- I never -- became -- I never -- I never had no type of contact with her. I was leaving the residence. |
| Plea Court: | And you are saying you never forced her into a closet or anything? |
| Petitioner: | Yes, okay. |
| Plea Court: | Sir? |
| Petitioner: | Yeah. |
| Plea Court: | Did you or you didn't? |
| Petitioner: | I never did none of that. |
| Plea Court: | All right. Go to trial and see if you can prove it in a trial. It's going to be a lot more serious next time around. You are going to be looking at life without parole. You are entitled to a trial. |
| Petitioner: | I -- I understand. |
| Plea Court: | You are entitled to a trial. |
| Petitioner: | No, understand what I'm saying. I didn't never try to do nothing to nobody again. |
| Plea Court: | I didn't ask you that. Now, listen. I asked you -- they gave the facts of this case as they have got it recorded from the witnesses, and they said you took a fork away from this girl and you put her in a closet. Did you do that? |
| Petitioner: | Yes, I did. |

29

| | |
|---|---|
| Plea Court: | All right. And these boys, did you take them by the scruff of the neck and take them from one part of the house to the other part?  Did you do that?  Or did -- not the scruff. Did you take them by their back of their shirt and move them from one place of the house to the other parts of the house? Did you do that? |
| Petitioner: | Yes, I did. |
| Plea Court: | That's kidnapping under the law.  When you force one -- when you force someone from one place, take them in your custody and take them from one place to another place in the house against their will and put them somewhere, that's kidnapping. Do you understand that? |
| Petitioner: | Yeah. Yeah, my lawyer explained that to me. |
| Plea Court: | All right. Well, that's kidnapping. Did you do that? |
| Petitioner: | Yeah. |

App. 25-27. The undersigned finds that plea counsel did not err by failing to object to the court's line of questioning above, under the first prong of *Strickland*. Furthermore, Petitioner had already admitted his guilt and admitted to understanding the constitutional rights he was waiving by entering the guilty plea. *See* App. 8-14. Moreover, had plea counsel objected, the undersigned does not find that there is a reasonable probability that Petitioner would have opted out of the plea deal and proceeded to trial. In other words, the undersigned finds that Petitioner was not prejudiced by plea counsel's failure to object, under the second *Strickland* prong. Therefore, the undersigned finds that the state PCR court's determination on the issue was not contrary to, or an unreasonable application of, clearly established federal law. *See e.g.,* 28 U.S.C. § 2254(d)(1) (2); *Williams,* 529 U.S. at 411; *Bustos*, 521 F.3d at 325-26. Therefore, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Petitioner's claim of ineffective assistance of counsel for failure to object during the plea colloquy, or Ground Four of this habeas Petition.

V.      Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 10, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.


October 29, 2015                                    Kaymani D. West
Florence, South Carolina                      United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**